Whitaker, Judge,
delivered the opinion of the court:
Plaintiffs are a partnership in the construction business. They sue to recover the sum of $17,099.91. They were the successful bidders on a contract for the erection of an Army hospital at Patterson Field, Ohio. They made mistakes in figuring their bid and they sue to recover the amount of the mistakes. It is admitted that there were mistakes and that the amount of them is $15,414.21.
Dougherty, one of the partners, was present when the bids were opened. The low bid was $189,000.00; plaintiffs’ bid was $210,661.00. The next low bid was $229,000.00. The others, of which there were ten, ranged from $235,000.00 to $264,000.00.
Upon returning to his home Dougherty checked the figures of his firm and discovered two errors in them as follows: (l} they intended to figure Workman’s Compensation Insurance and Social Security Insurance at 10 percent of the labor costs of $26,824.50, but, through inadvertence, they extended the amount at $268.24, instead of at $2,682.45; (2) they requested from a subcontractor a bid on the ventilation, air-conditioning, refrigeration, plumbing, gas fitting, heating *258 and electrical work, and they supposed that the bid submitted by one Schmidt, which they used in figuring their bid, included all these items, but it was discovered it did not include the electrical work. It is agreed the cost thereof was $13,000.00.
Upon discovery of these errors plaintiffs did not communicate with the contracting officer, as they should have done. They did not do so because theirs was not the low bid and they supposed the contract would not be awarded to them. " The low bid, however, was unacceptable and was rejected, and plaintiffs, being the nest low bidders, were awarded the contract.
Plaintiffs were first notified that their bid had been accepted by a phone message from a representative of the contracting officer, who wished to make an appointment with plaintiffs for the next day for the purpose of executing the formal contract. Then for the first time plaintiffs advised the defendant of the mistake made by them, and requested that consideration be given to adding the amount to their bid. The contracting officer, however, advised them he had no authority to make the correction and that “the exigency of the service” would not admit of the delay necessary to submit the matter to higher authority. He, therefore, demanded the execution of the contract, but stated that plaintiffs might make a claim for the additional amount upon completion of the contract, which he promised to forward “to proper authorities for consideration.”
The following day plaintiffs were presented with the formal letter of award, which had been written before the telephone call by the contracting officer’s representative, and demand was made for the execution of the contract. Plaintiffs at first refused to do so, but finally did so on January 24, 1941, with the understanding that the contracting officer was aware that a mistake had been made and that he would so report, but that he could give no assurance of the result because this was beyond his jurisdiction.
On conclusion of the work the plaintiffs did present a claim. Its payment was recommended by the District Engineer, who was the contracting officer, by the Division Engineer, and by the Chief of Engineers, but payment was denied by the Comptroller General.
*259 There can be no doubt that upon acceptance of their bid plaintiffs became obligated to do the work for the amount bid. When the contracting officer accepted the bid he was unaware that any mistake had been made. Plaintiffs had failed to notify him of it. Nor was there anything to put him on notice that a mistake probably had been made. Plaintiffs do not claim that there was. We have, then, a unilateral mistake, from which, of course, equity will not relieve. The first illustration given under section 503 of the Restatement of the Law of Contracts reads:
A, in answer to an advertisement of B for bids for the construction of a building according to stated specifications, sends B a bid of $50,000. B accepts the bid. A, in the calculations that he makes prior to submitting his bid, fails to take into account an item of construction that will cost $5,000. If B knows or, because of the amount of the bid or otherwise, has reason to know that A is acting under a mistake, the contract is voidable by A; otherwise not.
In the case of Edmund J. Rappoli Co., Inc., v. United States, 98 C. Cls. 499, upon which plaintiffs rely, the accepted bid was about one-third of the next lowest bid, and the plaintiff in that case also notified defendant’s representative of the mistake before its bid was accepted.
In Moffett, Hodgkins, etc., Co. v. Rochester, 178 U. S. 373, also relied on by plaintiffs, the bidder called attention to the error before an award had been made and asked permission to withdraw its bid.
These cases are not in point here.
We assume the department authorized to make the contract had the right to correct the error, although it was not under a legal obligation to do so; but, instead of doing this, it recommended to a different department that it make the correction. That department refused to do so. Since it was under no legal obligation to do so, plaintiffs are not entitled to redress in this court for its refusal to do so.
Plaintiffs’ petition will be dismissed. It is so ordered.
Madden, Judge; and Whaley, Chief Justice, concur.
Littleton, Judge, dissents.
Jones, Judge, took no part in the decision of this case.